1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**RYAN R. BLADZIK**
**On Behalf of Themselves**
**and All Others Similarly Situated,**

|  |  |
|---|---|
|  | **Hon.** |
| **Plaintiff,** | **Case No.** |
|  | **PROPOSED CLASS ACTION** |

**v.**

**PORTFOLIO RECOVERY ASSOCIATES, LLC,**
**PRA GROUP, INC. and KEVIN L. HOLST,**
**DAVID M. GREENBAUM, KIRSTEN L. PEPPER**
**employee attorneys**

**Defendants.**

---

### COMPLAINT AND JURY DEMAND

NOW COMES Plaintiffs, **RYAN BLADZIK** (hereinafter "Plaintiff" or "BLADZICK")

by and through co-counsel, The Law Offices of Brian Parker, PC and The Law Offices of

Nicholas A. Reyna and bring this action against the above listed Defendants, **PORTFOLIO**

**RECOVERY ASSOCIATES, LLC, ("PRA" or Defendant), KEVIN L. HOLST, DAVID M.**

**GREENBAUM and KIRSTEN L. PEPPER ("PRA" or "Defendant Attorneys** on the

grounds set forth herein:

**I. PRELIMINARY STATEMENT OUTLINING DEFENDANTS' "AFFIDAVIT ROBO NOTARIZING" AND FALSE OWNERSHIP AFFIDAVITS LACKING PERSONAL KNOWLEDGE AND PERJURY CONSEQUENCES COLLECTION PLAN AND SCHEME**

1.

2

Plaintiff brings this action for damages and injunctive relief based upon the Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* and The Regulation of Collection Practices Act (RCPA), codified at MCL 445.251 et seq.

2.

In Michigan, an Affidavit served with a lawsuit is prima facie evidence of indebtedness:

**600.2145 Open account or account stated; proof, counterclaim.**

Sec. 2145.

In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same.

3.

On or about September 8, 2015, The Consumer Financial Protection Bureau ("CFPB") penalized Portfolio Recovery Associates, LLC roughly $27 million in conjunction with a consent order with PRA for PRA's rampant violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC § 1692 et seq. *See* Consent Order, *In re* Portfolio Recovery Assocs., LLC, File No. 2015-CFPB-0023 (Consumer Fin. Prot. Bureau Sept. 8, 2015), attached as **<u>Exhibit 1</u>**.

4.

The CFPB found that the PRA employees who fill out PRA's affidavits do not review any actual evidence that would substantiate PRA's actions against individual consumers, such as a cardholder agreement bearing the alleged debtor's signature. Instead, they merely

3

glance at summary data on a computer screen. PRA requires its affiants to fill in templates,

indiscriminately generating boilerplate affidavits in which the affiant falsely attests or implies

that he or she possesses personal knowledge of a consumer's account-level documentation.

5.

Here, the PRA Affiant possesses no such personal knowledge of the information she

swears she is aware of and has reviewed. In fact, as the State Complaint Affidavit shows at

**Exhibit 2**, the Affiant does not swear to have *any* personal knowledge of the files or business

records of "Plaintiff" or the "Account Assignee" or "Account Seller." Further, the Affiant here

specifically and in all Affidavits state wide in Michigan, fails to mention that the representations

made in the Affidavit are done without the consequences of perjury acknowledged.

6.

The CFPB found that PRA engages in the widespread practice of submitting false or

deceptive affidavits to state and local courts in order to fraudulently obtain tens of thousands of

default judgments against consumers for phantom debts or debts they do not have standing to

pursue. Indeed most, if not all, of the judgments PRA obtains are default judgments, as very few

consumer-defendants in debt-collection cases take steps to defend themselves.

7.

A State court's power to issue a final judgment, such as a default judgment, may only be

invoked upon a foundation of admissible evidence. In most consumer debt-collection cases, the

underlying documentation concerning a purported debt has been generated by the credit- issuer's

computer system, and is therefore hearsay under state law throughout the nation. State and local

courts have allowed such documentation into evidence under the limited business records

exception to the hearsay rule, but only so long as an affiant with personal knowledge of the credit-

4

issuer's records has verified the specific account-level records at issue and attested to their

veracity. These minimal evidentiary requirements are an essential safeguard of consumers' rights.

8.

PRA is aware that significant inaccuracies may exist in the Sale Files of debts it

purchases, including that some Debts' balances were not reduced by a consumer's subsequent

payments. For instance, when a PRA senior manager raised a concern about the poor quality of

sellers' balance information and asked how PRA can know actual balances owed if it does not

receive information on post charge-off payments, PRA's Vice President for Collections

responded, "We don't. 90% of our cases are default judgments. We show the judge the math and

if no one disputes we get our judgment. Debtor has the right to defend and prove us wrong. If they

show payments we've missed, we amend the complaint." **Paragraph 28, Page 7 of Consent**

**Order at Exhibit 1**.

9.

Without sufficient account-level documentation—or access to anyone with personal

knowledge of a consumer's account—PRA knows it cannot make out a prima facie case

demonstrating the existence of any of its consumer debts.     As the CFPB's findings reveal,

engaging in a pattern and practice of abusing the judicial system is an essential component of

PRA's business model: PRA could not collect on its consumer debts any other way.

10.

In a state-wide scheme designed to eliminate the "Burden" in the Burden of Proof and

deceive Michigan residents into paying a debt or being defaulted in State courts where PRA

lacks ownership and/or proof of ownership to sue on a debt while eliminating the consumer's

5

legal defenses with false affidavits that lack personal knowledge and perjury protections from the Affiants of those Affidavits to create material and false representations to support computer template lawsuits that lack supporting documentation in violation of § 1692e, § 1692e (10), § 1692e (2)(A), § 1692e (9), § 1692f, § 1692d, MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).

## II. PARTIES

11.

Defendant PRA is a foreign corporation located in the State of Virginia and a debt collector that purchases and collects large portfolios of defaulted consumer receivables under 15 U.S.C. 1692a (6) and 15 U.S.C. 1692a(6)(f)(iii) and collects and services the debts through its own employees and attorneys by filing collection lawsuits supported by false and hearsay Affidavits in the 83 counties throughout the State of Michigan. **Please see Exhibit 2 which is an example of the template lawsuit and Affidavit filed as collection attempts**. Portfolio Recovery Associates, LLC is, either directly or indirectly, a wholly owned subsidiary of Defendant PRA Group, Inc.

12.

Defendant PRA Group, Inc., formerly known as "Portfolio Recovery Associates, Inc.", is a publicly traded Delaware corporation that buys consumer debt from the originating creditor, or from another debt-buyer, and then initiates, directly or indirectly, collections, or attempted collections, of consumer debts that were owed or due, or asserted to be owed or due, to the originating creditor. PRA Group, Inc. maintains offices at 120 Corporate Boulevard, Norfolk, Virginia 23502. PRA Group, Inc.'s securities are traded on the Nasdaq,

6

under the ticker symbol PRAA. PRA Group, Inc. describes itself as "a global leader in acquiring non-performing loans."

13.

Defendant Attorney Employees of PRA, **KEVIN L. HOLST, DAVID M. GREENBAUM and KIRSTEN L. PEPPER** ("Defendant Attorneys") who are debt collectors of defaulted debts under 15 U.S.C. 1692a (6) and 15 U.S.C. 1692a(6)(f)(iii) and sign off on collection lawsuits using false Affidavits signed by Affiants with no personal knowledge of the information they sign off on and with no perjury consequences to collect debts throughout the 83 counties in the State of Michigan. **Please see Exhibit 2**.

14.

Plaintiff Ryan Bladzik is located in the City of Holly, State of Michigan and considered a Consumer under the FDCPA and RCPA.

### III. JURISDICTION AND VENUE

15.

Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337. This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

16.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the

7

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be addressed separately").

17.

Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

### IV. STATUTORY STRUCTURE

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

18.

The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692.

19.

Plaintiffs are consumers. Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3).

20.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services

8

which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5).

21.

Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a (6).

22.

The Defendants regularly attempt to collect consumer debts alleged to be due another and are debt collectors as provided in 15 U.S.C. 1692a (6) and 15 U.S.C. 1692a(6)(f)(iii) as the bank and credit card debts Defendants purchase are in default when obtained by all Defendants. *Bridge v. Ocwen Federal Bank, FSB*, 681 F. 3d 355 - Court of Appeals, 6th Circuit 2012.

23.

The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation.   Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

24.

Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions.

9

*Wallace v. Washington Mutual Bank*, 683 F.3d. 323, 327 (6th Cir. 2012), *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006).

25.

Section 1692e provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1) -(16). Among the *per se* violations prohibited by that section are using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

26.

Section 1692e further provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(2)**The false representation of—
**(A)** the character, amount, or legal status of any debt; or
**(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**(9)** The use of a written communication falsely claiming authorization or approval of a court or State.

10

### **REGULATION OF MICHIGAN COLLECTION PRACTICES ACT (RCPA)**

27.

The Regulation of Michigan Collection Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

28.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes.

29.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than

11

the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim.

30.

Defendants are regulated agencies under the RCPA. See *Misleh* v *Timothy E. Baxter & Associates*, 786 F Supp. 2d 1330(E.D. Mich 2011; *Newman v. Trott & Trott, PC*, 889 F. Supp. 2d 948 - Dist. Court, ED Michigan 2012; *Baker v. Residential Funding Co.,* LLC, 886 F. Supp. 2d 591 - Dist. Court, ED Michigan 2012.

31.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium.

32.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt.

33.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or transferor of the debt shall continue to be considered the creditor or the principal for purposes of this act.

12

34.

"Person" means an individual, sole proprietorship, partnership, association, or corporation. Defendants are regulated persons under § 445.251(g)(xi). Defendants are violating the following RCPA subsections:

**445.252 Prohibited acts.**

(a) Communicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau; and

(b) Using forms or instruments which simulate the appearance of judicial process; and

(d) Using forms that may otherwise induce the belief that they have judicial or official sanction.

(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt; and

(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i) The legal status of a legal action being taken or threatened.

(ii) The legal rights of the creditor or debtor.

(iii) That the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of the debtor's property; and

(n) Using a harassing, oppressive, or abusive method to collect a debt…

(q) Failing to implement a procedure designed to prevent a violation by an employee.

35.

The Plaintiff, on behalf of himself and all others similarly situated, seeks Statutory Damages, ACTUAL DAMAGES, INJUNCTIVE RELIEF, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a Class Action context, pursuant to the FDCPA and the RCPA and all other common law or statutory regimes. The Plaintiff, on

13

behalf of himself and all others similarly situated requests that she and the class members be awarded:

a. Their Actual Damages suffered by the class members like Plaintiffs who are subject to the same the same collection/affidavit scheme or plan to burden debtors into not responding to collection lawsuits,
b. Injunctive Relief stopping Defendants from continuing their plan and scheme through debt collection lawsuits as alleged here
c. Attorney fees and costs under the FDCPA and RCPA.

36.

The RCPA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692e of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e 15 U.S.C. § 1692g and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

## V. CLASS ACTION ALLEGATIONS

37.

This Action is brought on behalf of Plaintiff and the class members under the FDCPA and RCPA with the class made up of the following class consumers:

All persons against whom Defendants filed a COMPLAINT-ACCOUNT STATED and/or obtained a default or default judgment related to the collection of consumer debt based upon insufficient, inadmissible evidence or an "Affidavit" that is signed by a Custodian Affiant who lacks personal knowledge of the debt information other that what

14

is witnessed in a computer screen and while signing off on material misrepresentation of debt ownership on behalf of Defendants PRA and PRA's Defendant Attorneys.

38.

While the exact number of Class members can only be determined through appropriate discovery, Plaintiff believes that there are thousands of debtors being sued in the State of Michigan that make up a large class.

39.

Plaintiff's claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct, as complained of herein.

40.

There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that might affect individual members. These questions include, but are not necessarily limited to, the following:

    a.   Whether PRA engaged in debt purchase transactions without verifying the validity of the alleged debts that it was purchasing;

    b.   Whether Defendants had sufficient evidence of the existence of the alleged consumer debts when they obtained default judgments;

    c.   Whether the alleged debtors were furnished with evidence of the alleged consumer debts;

    d.   Whether Defendants filed materially false and deceptive affidavits in conjunction with its litigation-based debt collection activities wherein the Affiants signing Affidavits had no personal knowledge of the material they sign as custodians for and sign without thoughts or threats of perjury consequences;

    e.   Whether Plaintiff and the other members of the Class are entitled to damages, including punitive damages, costs, and/or attorneys' fees, for Defendants' acts

15

and conduct as alleged herein, and the proper measure thereof.

41.

Plaintiff will fairly and adequately represent the Class members. Plaintiff has no interests that conflict with the interests of other Class members. Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

42.

A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members might be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.

Members of the Class can be identified from records maintained by Defendants and their Defendant Attorneys, and can be notified of the pendency of this action by United States mail using a form of notice customarily used in similar class actions.

## VI. FACTUAL ALLEGATIONS

44.

As detailed by the CFPB's consent order with PRA, Defendant PRA purchases in bulk purportedly delinquent credit card and other accounts with little or any proof of debtor ownership. Prior to purchase, information about the relevant portfolio of alleged debts is transmitted to PRA electronically in the form of a spreadsheet. The spreadsheet contains a list of accounts in the portfolio, as well as account-specific information such as each consumer's

16

name, Social Security number, last known address and telephone number, the account number, charge-off date, date and amount of last payment, and alleged amount owed.

**Paragraph 26, Page 7 of Consent Order at Exhibit 1**.

45.

 As of the time PRA completes a purchase of a portfolio of consumer debts, PRA is on notice that the electronic spreadsheet submitted to PRA prior to purchase is replete with inaccuracies. This is because the seller, through the parties' purchase agreement, disavows responsibility for the accuracy of the data contained in the spreadsheet. No representations are made by the seller of the debts to PRA regarding the accuracy of the information transferred in any sale.

46.

While fully aware that it cannot demonstrate the existence of any of the debts that it has purchased, let alone the exact amount possibly owed thereupon, PRA and their Defendant attorneys file "computer template" collection lawsuits alleging to be the owners of debts they are suing upon with the use of false Affidavits that lack the personal knowledge and any consequences of perjury by the Affiant/Custodian that signs them. Further, the Affidavits misrepresent that PRA are the are owners of the debt. **Please see Exhibit 2**.

47.

PRA's sole intention is to obtain default judgments without ever having had admissible prima facie evidence to substantiate its claims. During the Class Period PRA has filed thousands of debt-collection lawsuits state-wide all similar in shape and format to **Exhibit 2**.

48.

Upon information and belief, at least 90% of the lawsuits that PRA files against

17

consumers result in default judgments. This is because the vast majority of the legal actions that PRA files go uncontested, allowing PRA to collect on alleged debts that either are invalid or have an improperly inflated face value.

49.

Although PRA knows that much of the information that it receives from sellers at the time of portfolio purchase is inaccurate, PRA and its Defendant Attorneys presume that this information is accurate unless a consumer comes forward with proof to the contrary.

50.

Defendant PRA's Affiants and Custodian of Records have not reviewed account-level documentation (from the Creditor) or attached anything corroborating their representations when they sign off on "fill in the blank" type hearsay Affidavits attached to the computer-generated complaints like the one against Mr. Bladzik at **Exhibit 2**.

51.

Under MCL 600.2145 and as part of PRA's scheme to use materially false affidavits to obtain judgements throughout the State of Michigan, when PRA files the computer template lawsuit with the ***false Affidavit***, the Affidavit is deemed to be prima facie evidence of such indebtedness and then the burden of proof falls then on the debtor to prove she does not owe the debt the *false affidavit* wrongfully states to the debt (and defaulting Court) that she does.

52.

The hearsay representations made in the Affidavits are material because they are likely to affect the consumers choice or conduct regarding how to respond to a lawsuit and are likely to mislead Class members generally and Mr. Bladzik specifically when acting reasonably under the circumstances. **Paragraph 73, Page 19 of Consent Order at Exhibit 1**.

18

53.

PRA takes advantage of the fact that, under most states' civil procedure law, the public employees who oversee the default-judgment process engage in a largely ministerial function, relying upon the representations and certifications of the attorneys who practice before the court. Given that tens of thousands of such lawsuits are filed every year, judicial system personnel would be overwhelmed if they had to investigate the validity of each and every default judgment application.

54.

PRA takes advantage of this system of representation and certification of attorneys who practice before courts throughout the state by using its own attorneys to sign off on these collection lawsuits in quickly converting these State Lawsuits to a Default Judgment based on MCL 600.2145.

55.

Here and as is perpetrated throughout the State of Michigan, Defendants filed a collection lawsuit against Mr. Bladzik using the computer template pleadings and a false and hearsay Affidavit signed by Crystal Pope and Notarized by Christopher Ball in the State of Virginia. Defendant Attorneys sign off on the lawsuit from an address also in the State of Virginia without reviewing the file to verify what they are signing.

56.

As a side note, the signature of Christopher Ball signing as the Notary here:

19

Subscribed and sworn to before me on _____ APR 1 2 2017



Notary Public _____

appears to be much different than the signature of Christopher Ball on his Application for

Notary with the State of Virginia that requires a Notary to sign documents the same way they

sign their Application:

**Part 3: MUST be notarized by a Virginia Notary before submitting application**

I, Christopher Ball _____ solemnly swear or affirm under penalty of perjury that the information in this application is true, complete, and correct; that I understand the official duties and responsibilities of a notary public in the Commonwealth of Virginia, as described in the statutes; and that I will perform to the best of my ability all notarial acts in accordance with the law.

**Signature of Applicant:** _____

(This signature must match the name on line 1 of this application and must be used in signing all notarized documents.)

**\*\* TO BE COMPLETED BY VIRGINIA NOTARY BEFORE SUBMITTING \*\***

**Please see Exhibit 3**.

57.

Defendant PRA and Defendant attorneys are filing these collection lawsuits in courts

within the State of Michigan without "A certified or other properly authenticated copy of each

bill of sale or other document evidencing the transfer of ownership of the Debt at the time of

Charge-off to each successive owner and with no evidence or specific reference to the particular

Debt being collected upon and the proof attached to collect on that debt. **Please see Paragraph**

20

**119 b. Page 33 of Exhibit 1**.

58.

In Michigan, the Court Rules on Pleading require that the written agreement that the

action is based upon be attached to the pleading or state in the pleading that the written

agreement is in the possession of the Defendant:

### Rule 2.113 Form of Pleadings and Other Papers

(F) Exhibits; Written Instruments.

> (1) If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit unless the instrument is

> > (a) a matter of public record in the county in which the action is commenced and its location in the record is stated in the pleading;

> > (b) in the possession of the adverse party and the pleading so states;

> > (c) inaccessible to the pleader and the pleading so states, giving the reason; or

> > (d) of a nature that attaching the instrument would be unnecessary or impractical and the pleading so states, giving the reason.

59.

Here, there is no contract or cardholder agreement attached to the collection lawsuits and

there are no references under 2.113(F)(1)(b) and (c) that the credit card agreement or written

instrument is in the possession of the defendant/consumer as required by court rule in the

computer template lawsuits here in **Exhibit 2** and throughout the State of Michigan.

60.

The "PRA" lawsuits and Affidavits all state on every page that:

**This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.**

21

Defendant PRA Attorneys are communicating this information to debtors throughout the state under 15 U.S.C. § 1692a (2) and MCL 445.251(c).

61.

In violation of MCR 2.114 and MCR 2.113, the Defendant Attorneys from PRA are signing these Complaints with no meaningful involvement or any reading of the lawsuit the attorney is vouching for.

## VII. NO MEANINGFUL INVOLVEMENT BY SIGNING ATTORNEY DEFENDANTS

62.

Given the violation of the pleading rules under MCR 2.113(F), Plaintiff is informed and believes, and on that basis allege, that the Defendants have a policy and practice of filing lawsuits that are computer-generated, mass-produced pleadings in violation of the pleading requirements of the Michigan Court Rules – in the form of the PRA lawsuits at **Exhibit 2** that refer to Exhibit Affidavits with false and hearsay information to prove their case

. -- ***without any meaningful attorney review or involvement*** prior to the filing of the collection lawsuits in violation of 15 U.S.C. §§ 1692e and 15 U.S.C. §§ 1692e (3).

63.

In violation of MCR 2.113(F) generally and MCR 2.113(F)(1)(b) and (c) specifically, if the Defendant PRA attorneys had read or reviewed or had meaningful involvement in reading or creating the "PRA" lawsuits, the Defendant attorneys would have known that there is no cardholder agreement attached to the lawsuit and that there is no required paragraph in the pleading stating that the written instrument is "in the possession of the adverse party."

64.

The PRA collection lawsuits were computer generated by rote and created by non-

22

attorney employees of PRA or its subsidiaries, without any meaningful or substantive review of

the debtor file by any PRA Attorney that signs off on the complaints." *Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir. 2008).

65.

Defendants' scheme and plan to both, eliminate the rights of consumers' ability to defend

themselves and convince a State Court that a Default and Default Judgement is warranted on the

merits of a false complaint and false and hearsay affidavit, is not complete or possible without

the attorneys from Defendant PRA signing off on the whole thing. **Please see the lawsuit as**

**filed against the Plaintiff attached as an example of the use of this format and dependence**

**on the Affidavits at Exhibit 2**.

### VII. THE FALSE AND HEARSAY AFFIDAVITS

66.

The defendant Affidavits created by PRA have all the same information except for the

key "fill in" facts specific to the debtor being sued. The form used seeks to create a document

with a court caption as though it has official or judicial sanction:

**AFFIDAVIT**

Commonwealth of Virginia
City of Norfolk ss.
                    Crystal Pope

I, the undersigned, _____, Custodian of Records, for Portfolio Recovery Associates, LLC hereby
depose, affirm and state as follows:

67.

The fraudulent acts of Defendants consisted of the use of uniform and deceptive and

misleading affidavits by Defendants under MCL 600.2145. Nothing is more material to the least

sophisticated consumer than how it's reaction is shaped and changed by deceptive and

23

misleading pleadings and supporting affidavits.

68.

But for the material misrepresentations of Defendants through false affidavits and violations of the Michigan Court rules, there is no proof that PRA has the right to sue the Plaintiffs specifically or the Plaintiff class generally for these credit card debts. Michigan consumers are forced to defend themselves against a debt collector suing them with false information under MCL 600.2145 and in violation of the Consent Order at **Exhibit 1**.

69.

The material misrepresentation in the Affidavits help Defendants eliminate the "Burden" in their Burden of Proof in State Court by presenting false affidavits under MCLA 600.2145 requiring class members an increased burden of defending themselves in court against a collector using false paperwork and attorney proof.

70.

Time is money and a Default Judgment is the goal of Defendants. The vast majority of the Debt collection lawsuits PRA files go unanswered by Consumers and result in default judgments given the ready-made but false Affidavit presented to the defaulting Court.

71.

Defendants file hundreds of thousands of these collection lawsuits in the State of Michigan. The use of false and hearsay Affidavits signers eliminates the cost of verifying that Defendants truly own the debt and that the debtor owes the amount in the Affidavit and Complaint. A "sworn" affidavit takes the place of the necessary proof and paperwork and eliminates the associated cost of proving the debt is owed to Defendants by class members and falsely forces the burden of proof onto the debtor under 600.2145.

24

72.

There can be no greater and material misrepresentation upon the Michigan Consumer here than the scheme and plan through these verified lawsuits and false Affidavits in an effort to convince consumers that they have no defense to a case and to persuade courts that Defendants are legally entitled to Default Judgments under MCL 600.2145.

73.

In violation of the FDCPA and RCPA, the material misrepresentations of the Defendants go to the heart of the consumer's due process right to defend themselves against a lawsuit. The actions to falsify Affidavit verifications, to have Attorneys verify pleadings they have not read and/or that don't follow the Michigan Court Rules on pleadings is purposeful misrepresentation on the part of Defendants to eliminate the legal rights and defenses of debtors and to prop up false Default Judgments in Michigan Courts.

74.

The "Asset" Affidavit and false signatures are crafted to deceive the class members and Courts in the State of Michigan into believing PRA has the right to sue and collect upon debts either in trials or to support Default Judgments in violation of § 1692e, § 1692e (3), § 1692e (10), § 1692e (2)(A), § 1692e (9), § 1692f, § 1692d, MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f), MCLA 445.252(q), MCLA 339.915(a), (b), (d), (f), (n), (q) and MCLA 339.915a(a), (b), (c), (d) and (f).

## VIII. CLASS ACTION ALLEGATIONS

75.

Plaintiff tentatively defines two classes including all persons in the State of Michigan who, during the one year (FDCPA) and six years (RCPA prior to the filing of this complaint were the

25

victims of "PRA Affidavits" and "PRA Lawsuits" created by Defendants in violation of Federal and State law.

76.

The FDCPA Class consists of all persons with a Michigan address that are subject to the Defendants' collection lawsuits in violation of § 1692e, § 1692e (10), § 1692e (3), § 1692e (2)(A), § 1692e (9), § 1692f and § 1692d.

77.

The RCPA Class consists of all persons with a Michigan address that have received Defendant collection lawsuits in violation of MCLA 445.252(n), MCLA 445.252(e), MCLA 445.252(b), MCLA 445.252(d), MCLA 445.252(f) and MCLA 445.252(q).

78.

There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in connection with the collection of a debt violates the FDCPA and RCPA.

79.

There are no individual questions here. All Michigan class members receive the same or similar computer template "PRA Affidavits" and "PRA Lawsuits" with false verifications or lack of personal knowledge on the part of the Attorneys and Affiants in violation of the FDCPA and RCPA.

80.

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter. He is greatly annoyed at being the victim of Defendants' illegal

26

practices and wishes to see that the wrong is remedied. To that end, he has retained counsel experienced in litigating consumer advocacy and class claims. Neither Plaintiff nor their counsel has any interests which might cause them to not vigorously pursue this claim.

81.

Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories out of **Exhibits 2**.

82.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who are subject to this practice and policy of Defendant undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are $1,000. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

83.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a)   The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

(b)   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

84.

There are questions of law and fact common to the class members, which common

27

questions predominate over any questions that affect only individual class members.   The predominant questions are:

      a.   Whether defendants had a practice of using "PRA Affidavits" and "PRA Lawsuits" with false Affiant and Attorney by Affiants and attorneys with no personal knowledge of the subject debt to support collection lawsuits against Michigan residents in violation of the FDCPA and RCPA without meaningful review.

      b.   Whether doing so violated the FDCPA and RCPA.

85.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

86.

Plaintiff requests certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

## IX. CLAIMS FOR RELIEF

### Class 1-Fair Debt Collection Practices Act

87.

Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.   Defendant PRA violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt using the collection methods at **Exhibit 2** above that are

material to due process and the response of the consumer who is being sued under MCL 600.2145 with false documentation and verifications that but for the material misrepresentations, the Consumer would have a less burdensome or better defense to the lawsuit including the Affirmative Defense of "lack of ownership" "no assignment or sale of the debt" and other defenses the consumer believes she does not have because of the false documents used by Defendants; and

b.      Defendant PRA and Defendant Attorneys collected on the debt and violated 15 U.S.C. 1692f by designing and furnishing the "Affidavits" at **Exhibit 2** knowing that such a format would be used to create the false belief in the class member and Michigan Courts that a lawsuit was supported by a legally notarized Affidavit when in fact, such is not the case as stated above; and

c.      Defendant Attorneys Kevin L. Holst, David M. Greenbaum and Kirsten L. Pepper collected on the debt and violated 15 U.S.C. 1692f (1) with no proof, chain of title or transfer, authorization or card holder agreement to collect any amount, interest, fee or any charges on the false "PRA Affidavits" and "PRA Lawsuits" at **Exhibit 2**; and

d.      Defendant PRA and Defendant Attorneys collected on the debt and violated 15 U.S.C. 1692e (5) by designing and furnishing false and hearsay "Affidavits" at **Exhibit 2** to falsely accuse, threaten and sue class members without the necessary proof; and

e.      The Defendants violated 15 U.S.C. §1692e(2)(A) in falsely representing that a collection lawsuit and judgment is falsely supported by the "PRA Affidavit" as stated above; and

f.      The Defendants violated 15 U.S.C. §1692e(9) by creating and verifying false Affidavits to have the Michigan consumer believe that the Affidavits are legal process or certified by a Court by naming Plaintiffs and Defendants that did not exist at the time the parties were

named along with information in a lawsuit and affidavit to create the false belief that the documents were properly notarized and/or authorized by attorneys following the Michigan Court Rules to fool Michigan Consumers into believing Defendants were authorized to sue them and they owned the debt that was the basis of the lawsuit and Affidavit as stated above at **Exhibits 2**; and

g.   Defendants collected on the debt and violated 15 U.S.C. 1692d by designing and furnishing false "PRA Affidavits" at **Exhibit 2** and lawsuits (collection attempts) to abuse and harass Michigan Consumers into paying a debt to Defendants based on that false proof in violation of the Michigan Court Rules in pleading and verification; and

h.   Defendant PRA Attorneys violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (3) by approving and verifying false lawsuits and false affidavits where there is no meaningful involvement by the attorney other than signing something she has not read.

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.   Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B); and

b.   Statutory damages for the members of the FDCPA Class, *pro rata,* in the amount of the lesser of $500,000.00 or one percent centum of the net worth of Defendants pursuant to 15 U.S.C. 1692k(a)(2)(B); and

c.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and

d.   Actual Damages in the form of the required elevated responses, stress and out of pocket costs of having to respond to a false debt collection lawsuit under MCL 600.2145 (**Exhibit 2**); and

e.   Such further relief as the court deems just and proper.

30

**Class 2- RCPA Class Allegations for Actual Damages and Injunctive Relief**

88.

Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.   Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using **Exhibit 2** as mentioned above;

b.   Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt at (**Exhibit 2**); and

c.   Defendants have violated MCLA 445.252(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i)   The legal status of a legal action being taken or threatened.

(ii)   The legal rights of the creditor or debtor at (**Exhibit 2**);

d.   Defendants have violated MCLA 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee by continuing to seek unauthorized advances not authorized under the mortgage contract of Michigan Consumers for six years through forms at **Exhibit 2**; and

e.   Defendants have violated MCLA 445.252(b) by creating documents designed to simulate the appearance of judicial process or appearance at **Exhibit 2**; and

f.   Defendant PRA and Defendant Attorneys have violated MCLA 445.252(a) by communicating with debtors in a deceptive manner at **Exhibit 2**.

31

**Wherefore**, Plaintiff seeks judgment against Defendants for:

a.      Statutory damages for Plaintiff in the amount of $50.00, trebled to $150.00 for a willful

violation, pursuant to M.C.L. 445.257(2);

b.      Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1), including but

not limited to, a declaration that defendant's debt collection practices violated the RCPA,

as well as an injunction, enjoining Defendant from using **Exhibit  2** which violates

Michigan law AND THE CONSENT ORDER attached at **Exhibit 1**; and

c.      Reasonable attorney's fees and court cost pursuant to M.C.L. 445.257(2) with judicial

sanction.

d.      Actual Damages in the form of the required elevated responses, stress and out of pocket

costs of having to respond to a false debt collection lawsuit under MCL 600.2145 (**Exhibit**

**2**);


## X. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

                                            Respectfully submitted,

June 3, 2017                                s/Brian P. Parker
                                            BRIAN P. PARKER (P48617)
                                            Co-Counsel Attorney for Plaintiff

                                            /s/ Nicholas A. Reyna
                                            NICHOLAS A. REYNA (68328)
                                            Attorney for Plaintiff